**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-02422-NYW-SKC

MICHELLE DRUM,

      Plaintiff,

v.

USAA GENERAL INDEMNITY COMPANY, and
INFINITY AUTO INSURANCE COMPANY,

      Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

This case is before the Court on the following motions: (1) Defendant USAA General Indemnity Company's Motion for Summary Judgment ("USAA's Motion"), [Doc. 34, filed September 23, 2022]; (2) Defendant Infinity Auto Insurance Company's Motion for Summary Judgment ("Infinity's Motion"), [Doc. 41, filed November 14, 2022]; and (3) Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), [Doc. 42, filed November 15, 2022]. The Court concludes that oral argument would not materially assist in the resolution of these matters. Upon careful review of the instant Motions and corresponding briefing, the entire case file, and the applicable case law, the Court respectfully **GRANTS** USAA's Motion, **GRANTS** Infinity's Motion, and **DENIES** Plaintiff's Motion.

### BACKGROUND

This is an underinsured motorist ("UIM") lawsuit arising from a rear-end collision that occurred on January 13, 2018, in which Plaintiff Michelle Drum ("Plaintiff" or "Ms. Drum") was the passenger in a truck that her then-boyfriend, Frank Frucci ("Mr. Frucci"), was driving (the

"Collision").  Ms. Drum claims that, on the day of the Collision, she was an "insured" under insurance policies issued by Defendants USAA General Indemnity Company ("USAA") and Infinity Auto Insurance Company ("Infinity" and, collectively, "Defendants").  [Doc. 5 at ¶¶ 14–15].  Ms. Drum also alleges she was an "insured" under insurance policies issued by Geico Insurance ("Geico") and American Family Insurance ("AFI").  [*Id.* at ¶ 16].

After the Collision, Ms. Drum recovered $50,000.00 in available bodily injury coverage from the tortfeasor's carrier, Safeco Insurance ("Safeco"); $100,000.00 in UIM benefits from Geico; and $100,000.00 in UIM benefits from AFI, for a total of $250,000 of insurance benefits.  [Doc. 35 at ¶¶ 5–7].  Ms. Drum alleges that her injuries, damages, and losses arising out of the Collision exceeded the amounts she received from Safeco, Geico, and AFI.  [Doc. 5 at ¶ 19].  Therefore, she sought UIM benefits from USAA and Infinity.  However, after Defendants failed to grant her such benefits, Ms. Drum initiated this action.

Ms. Drum filed her Complaint on August 3, 2021 in the District Court for Larimer County, Colorado.  *See generally* [*id.*].  Therein, she asserts six causes of action—three against USAA and three against Infinity: breach of contract (Counts I and II); statutory unreasonable delay or denial of benefits pursuant to Colo. Rev. Stat. 10-3-1115 and -1116 (Counts III and IV); and common law bad faith (Counts V and VI).  [*Id.* at 4–10].  On September  8, 2021, USAA removed this case to the United States District Court for the District of Colorado based on diversity jurisdiction.  [Doc. 1].  Defendants filed their respective Motions for Summary Judgment on September 23, 2022 and November 14, 2022, [Doc. 34; Doc. 41], and Plaintiff filed her Motion for Summary Judgment on November 15, 2022, [Doc. 42].  The Motions have been fully briefed, and are thus ripe for disposition.  *See* [Doc. 35; Doc. 40; Doc. 45; Doc. 46; Doc. 48; Doc. 49].

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted). It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial. *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). At all times, the Court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

In addition, "[c]ross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party." *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019); *see also Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

## ANALYSIS

### I.   USAA's Motion for Summary Judgment

USAA seeks summary judgment on the basis that Ms. Drum does not meet the definition of an insured under the USAA Policy because she did not "reside" at the same address as her father Allen Drum, the named insured, at the time of the Collision. The USAA Policy listed Allen

Drum's address as 413 S. Grant Avenue, Fort Collins, Colorado 80521 (the "Grant Property" or "Grant Street address"). [Doc. 34-1 at 6]. And because residence at the Grant Street address was a prerequisite to coverage as a "family member" under the USAA Policy, USAA argues that Ms. Drum cannot establish any of her claims against it. *See* [Doc. 34]. Ms. Drum disagrees, countering that she was indeed a "resident" of her father's home on the date of the Collision or, at a minimum, there is a genuine dispute on this issue that precludes summary judgment. *See* [Doc. 35 at 18–21].

### A.      Undisputed Material Facts

Before setting forth the undisputed material facts, the Court notes that its Civil Practice Standards provide that:

> In a section of the brief required by Local Civil Rule 56.1(a) styled "Statement of Undisputed Material Facts," the movant shall set forth in simple, declarative sentences, separately numbered and paragraphed, each material fact that the movant believes is not in dispute and that supports the movant's claim that movant is entitled to judgment as a matter of law.

Civ. Practice Standard 7.1D(b)(1). In addition, the "party opposing the motion for summary judgment shall, in a section of the brief styled 'Response to Statement of Undisputed Material Facts,' admit or deny the movant's asserted material facts. The admission or denial shall be made in separate correspondingly numbered paragraphs." *Id.* at 7.1D(b)(4). And then, if the opposing party "believes that there are additional disputed questions of fact that have not been adequately addressed . . . , the party shall, in a separate section of the brief styled 'Statement of Additional Disputed Facts,' set forth in simple, declarative sentences, separately numbered and paragraphed, each additional, material disputed fact that undercuts the movant's claim that it is entitled to judgment as a matter of law." *Id.* at 7.1D(b)(5). Although the foregoing Civil Practice Standards did not take effect until December 1, 2022—i.e., after the Parties completed their briefing—this

Court's previous Civil Practice Standards contained substantially the same requirements.[1]

Although USAA's opening brief substantially complies with these express requirements, *see* [Doc. 34 at 3–9], Ms. Drum fails to do so in the Response. Instead, she raises two issues that the Court addresses in turn. First, Plaintiff begins her Response to USAA's "Statement of Material Facts" section by stating that she "adopts the parties' undisputed facts *from the Scheduling Order*," and then claiming that "[n]one of [those] facts were ever changed or requested to be modified by" USAA "until the filing of its Motion for Summary Judgment on September 30, 2022." [Doc. 35 at 2–3 (emphasis added)]. The Parties stipulated in the Scheduling Order that "Plaintiff is an insured under USAA GIC policy number 02652 51 52 7101 0 subject to its terms, conditions, and exclusions." [Doc. 35 at ¶ 4; Doc. 20 at 6]. On Reply, USAA contends that it cannot be bound to the Stipulated Facts as set forth in the Scheduling Order because it did not learn of the facts that give rise to its argument that Ms. Drum does not constitute an insured under the Policy—i.e., her place of "residence" at the time of the Collision. [Doc. 40 at ¶ 4].

The Court declines to preclude Defendant from challenging whether Ms. Drum is a proper insured under the Policy based on the undisputed fact in the Scheduling Order, and repeated in Plaintiff's Response, that "Plaintiff is an insured under USAA GIC policy number 02652 51 52 7101 0 subject to its terms, conditions, and exclusions." [Doc. 35 at ¶ 4; Doc. 20 at 6]. On June 26, 2020, Plaintiff's attorney sent USAA a demand for UIM benefits, but the letter did not advise that Plaintiff had been living[2] with Mr. Frucci from 2014 to 2020. [Doc. 34 at ¶ 39; Doc. 34-6;

---

[1] *See* [Doc. 40 at 2 (USAA's observation that "this Court's Civil Practice Standard IV.D.3" required Plaintiff to "respond directly to USAA['s] . . . Statement of Material Facts and either admit or deny each fact and then provide any additional facts under a different section")].

[2] The Court uses the term "living" because USAA and Plaintiff dispute whether Plaintiff "resided" with Mr. Frucci. *Compare, e.g.*, [Doc. 34 at ¶ 12 ("Ms. Drum began to reside with Mr. Frucci on a full-time basis in 2014.")] *with* [Doc. 35 at ¶ 20.i. ("Ms. Drum did not 'reside' with Mr. Frucci as Defendant uses that term.")]. At her deposition, however, Plaintiff agreed that she was "living"

Doc. 35 at ¶ 30]. Before her deposition in July 2022, Plaintiff had never informed USAA that she was "staying for some time" with Mr. Frucci prior to the Collision, nor did she give any indication that she was living anywhere other than the Grant Street address at the time of the Collision. [Doc. 34 at ¶ 41; Doc. 34-2 at 14:8–13; Doc. 35 at ¶ 31].[3] The Tenth Circuit addressed a similar situation in *Smith v. Argent Mortgage Company*, 331 F. App'x 549 (10th Cir. 2009). [Doc. 40 at ¶ 4]. The *Smith* court affirmed a district court's decision not to give weight to the undisputed facts in a scheduling order because the facts were subsequently disputed in the parties' final pretrial order, "the determinative document for purposes of setting forth the disputed fact issues to be decided at trial." *Smith*, 331 F. App'x at 556. The court observed that where "the party making an ostensible judicial admission explains the error in a subsequent pleading or by amendment, the trial court must accord the explanation due weight." *Id.* (citing *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859–60 (9th Cir. 1995)). Here, USAA explains that it did not discover the information related to Ms. Drum's residency "until her deposition in July 2022, well after the Scheduling Order was entered." [Doc. 40 at ¶ 40]. And, as discussed further below, Ms. Drum does not dispute that she did not inform USAA about her living arrangements until that time. *See* [Doc. 35 at ¶ 31]; *see also*

---

or "staying with Frank" at the time of the accident, *see, e.g.*, [Doc. 34-2 at 26:2–5], so the Court will continue to use the term "living" here.

[3] Plaintiff disputes these facts on the grounds that that (1) her "reasonable expectation and understanding of her 'residence' is well-established" and she "lived at the Grant Property and had no intention of 'residing' elsewhere"; (2) USAA "investigated her residency and had a claim opened for Mr. Frucci, as well as running . . . several other claim investigation tactics that result[ed] in its decision to determine that she was an insured on the date of the Collision"; and (3) USAA "had already confirmed Ms. Drum's status as a 'resident relative' and made a coverage decision well-before litigation and made no efforts in its claim handling process to further investigate the issue until months into the litigation." [Doc. 35 at ¶ 31]. None of Plaintiff's disputes—including her understanding of her "residence" and USAA's various findings during its pre-litigation investigation—address whether Plaintiff informed USAA about her living arrangements with Mr. Frucci. The Court therefore deems these facts undisputed.

*Wheeler v. John Deere Co.*, 935 F.2d 1090, 1098 (10th Cir. 1991) ("Stipulations are not absolute, however, and may be withdrawn whenever necessary to prevent manifest injustice.").[4]

Plaintiff also purports to identify some undisputed "material facts as presented by" USAA "in its Motion for Summary Judgment (without duplicating the stipulated undisputed facts from the Scheduling Order)," [Doc. 35 at 3–12], and then she concludes by presenting argument as to USAA's reliance on a Declaration by Mr. Frucci, claiming that:

> Mr. Frucci has yet to be deposed and USAA GIC had years of opportunity to uncover the disputed facts that Mr. Frucci conveniently declared in support of a Motion against his ex-girlfriend after his infidelity was discovered (and several years after having an open claim with Defendant USAA GIC himself).

[*Id.* at 12].

As an initial matter, Plaintiff cites no authority, and this Court found none, that permits this Court to disregard Mr. Frucci's sworn declaration or ascertain his credibility.  It is also unclear how some of Plaintiff's contentions are material.  For instance, Ms. Drum contends that USAA has not demonstrated that Ms. Drum's residence at her father's household was considered during its underwriting of the Policy.  [Doc. 35 at ¶ 18.i].  But Plaintiff does not explain how an

---

[4] In addition, the Court has not yet entered a Final Pretrial Order in this case.  Thus, given Defendant's current position with respect to Plaintiff's insured status at the time of the Collision, the Court doubts that Defendant would once again assert as undisputed that "Plaintiff is an insured" in a final pretrial order.  *See* Wright & Miller et al., 6A Federal Practice & Procedure § 1522 (3d ed.) ("It is for this reason that the pretrial order is treated as superseding the pleadings and establishing the issues to be considered at trial.").  Moreover, "[a] judicial admission must be deliberate, clear, and unequivocal." *Skyline Potato Co. v. Rogers Bros. Farms, Inc.*, No. 10-cv-02353-WJM-KLM, 2011 WL 2791531, at *5 (D. Colo. July 15, 2011); *see also Armstrong v. JPMorgan Chase Bank Nat. Ass'n*, 633 F. App'x 909, 912 (10th Cir. 2015).  As mentioned, the "fact" that Plaintiff seeks to preserve from the Scheduling Order states that "Plaintiff is an insured . . . *subject to [the USAA Policy's] terms, conditions, and exclusions*," [Doc. 35 at ¶ 4 (emphasis added)]—not simply that "Plaintiff is an insured."  And, as discussed further below, USAA argues that Ms. Drum is *excluded* from coverage because she was not a resident of Allen Drum's household at the time of the Collision, which was an express requirement for coverage under the USAA Policy.  Thus, the Court's analysis on this issue would not change even if it were to credit this "fact" because whether "Plaintiff is [indeed] an insured" is "subject to" the terms of the Policy.

underwriting determination made at some unknown date creates a genuine issue of material fact as to whether she resided at her father's house at the time of the Collision.  [*Id.*].  In addition, at times, Ms. Drum counters USAA's asserted undisputed facts with legal conclusions.  *See, e.g.*, [*id.* at ¶ 21.i ("Ms. Drum did not 'reside' at the Wood Lane Property as Defendant USAA GIC uses that term.").  Finally, the Court is troubled by Ms. Drum's failure to inform the Court that she relies upon surveillance footage by Infinity from *2021*—after her relationship with Mr. Frucci ended and she moved out of his home—to support the conclusion that she was residing at the Grant Property as of the time of the Collision in *2018*.  *Compare, e.g.*, [Doc. 35 at ¶ 23.ii. ("Surveillance footage from Infinity Auto Insurance clearly shows Ms. Drum coming and going to the Grant Property as her home.")] *and* [Doc. 35-5 at 1 ("Surveillance Update" dated January 17, 2021)] *with* [Doc. 34-3 at ¶ 23 (Mr. Frucci's assertion that the relationship ended in "early 2020")].  Such failures to comply with the Court's Practice Standards hinders this Court's ability to meaningfully analyze the merits of USAA's Motion.  *See Tracy v. Suncor Energy (U.S.A.) Inc.*, No. 20-cv-01597-WJM-NYW, 2021 WL 5140300, at *6 (D. Colo. Nov. 4, 2021).

The Court nevertheless identifies the following relevant, undisputed material facts from the record before it:

**The USAA Insurance Policy**

1.      USAA issued an insurance policy, effective December 4, 2017 to June 4, 2018, to Allen Drum, Plaintiff's father (the "USAA Policy").  [Doc. 34-1 at 6].

2.      The Policy listed Allen Drum's address as the Grant Street address, [*id.*], and Allen Drum is the owner of the Grant Property.  [Doc. 34 at ¶ 25; Doc. 35 at ¶ 16].

3.      Ms. Drum is not a named insured under the USAA Policy.  [Doc. 34-1 at 6; Doc. 34 at ¶ 2; Doc. 35 at ¶ 18.i.].

4.      The Policy defines the term "Covered person" as "**You** or any family member," and defines the term "family member" as a "person related to **you** by blood, marriage, or adoption, who *resides primarily in* **your** *household*."  [Doc. 34-1 at 22, 31 (italics added)].

***Ms. Drum's Relationship with Mr. Frucci and Her Living Arrangements at the Time of the Collision***

5.      Ms. Drum began dating Mr. Frucci in or about 2012.  [Doc. 34-2 at 14:14–21].[5]

6.      From 2007 to 2020, Mr. Frucci lived at 1435 Wood Lane, Fort Collins, Colorado 80524 (the "Wood Lane Property").  [Doc. 34-3 at ¶ 3].

7.      Ms. Drum began living with Mr. Frucci at the Wood Lane Property in about 2014.  [Doc. 34-2 at 25:4–19; Doc. 34-3 at ¶ 5; Doc. 34 at ¶ 12; Doc. 35 at ¶ 20].

8.      Ms. Drum's then-teenage daughter also began living at the Wood Lane Property around the same time.  [Doc. 34-3 at ¶ 9; Doc. 34-2 at 19:12–14; Doc. 34 at ¶ 15].

9.      Ms. Drum had three dogs in 2013, all of whom she took with her to the Wood Lane Property when she began living there.  All three dogs lived out the rest of their days at the Wood Lane Property.  [Doc. 34-2 at 22:19–25:3].

10.     During their time living together, Ms. Drum and Mr. Frucci purchased appliances and furniture for communal use at the Wood Lane Property.  [Doc. 34-3 at ¶¶ 14–15; Doc. 34 at ¶ 14; Doc. 35 at ¶ 22].[6]

---

[5] When citing deposition transcripts, the Court will cite to the page number in the transcript as opposed to the page number generated by the CM/ECF system.

[6] Ms. Drum disputes this fact on the basis that she "had no personal furniture at Mr. Frucci's rented home."  [Doc. 35 at ¶ 22.i.].  However, the deposition testimony that Plaintiff cites for support states nothing about whether Plaintiff and Mr. Frucci "purchased furniture together" or "purchased household appliances for the Wood Lane Property," as Mr. Frucci states in his Declaration.  [Doc. 34-3 at ¶¶ 14–15].  Rather, Plaintiff responded "I don't think so" when asked if she ever "move[d]" any of *her own furniture* to the Wood Lane Property.  [Doc. 35-4 at 63:8–12].  Accordingly, the Court deems this fact undisputed.

11.     Ms. Drum painted the house at the Wood Lane Property.  [Doc. 34-2 at 261:7–9]. She also completed yardwork, laundry, and housework at the Wood Lane Property.  [*Id.* at 261:2–6; Doc. 34-3 at ¶ 16].

12.     Ms. Drum testified that, as of January 13, 2018, i.e., the date of the Collision, she had "been staying for some time with [Mr. Frucci]."  [Doc. 34-2 at 14:8–13].[7]

13.     From 2014 until the relationship ended in early 2020, Ms. Drum lived mostly and the Wood Lane Property with Mr. Frucci and as of January 13, 2018, Ms. Drum stayed at the Grant Property "infrequently."  [Doc. 34-2 at 26:6–10; Doc. 34-3 at ¶ 23; Doc. 34 at ¶ 17].

14.     The Grant Property was an approximately 800 square foot house with two bedrooms and one bathroom.  [Doc. 34 at ¶ 24; Doc. 34-3 at ¶ 17].

15.     As of January 13, 2018, Plaintiff's two adult sons resided at the Grant Property. [Doc. 34-3 at ¶ 20; Doc. 34 at ¶ 29].

16.     Ms. Drum testified that the "tiny little house on South Grant couldn't accommodate" Ms. Drum, her father, and her three children because "it's not large enough."  [Doc. 34 at ¶ 27; Doc. 34-2 at 10:19–24].[8]

---

[7] Despite that this is Plaintiff's own testimony, she again attempts to dispute this fact despite on the basis that she "slept at Mr. Frucci's house as his girlfriend but maintained her home at Grant Property" and "never intended her temporary sleeping arrangements with Mr. Frucci to be permanent."  [*Id.* at ¶ 28 (citing her deposition testimony)].  Plaintiff's citation to other deposition testimony regarding her sleeping arrangements or intent does not create a genuine issue of material fact in light of her express testimony that she had been "staying for some time" at the Wood Lane Property as of the date of the Collision.

[8] Ms. Drum disputes her own deposition testimony on the basis that her father "owns a trailer with sleeping quarters that also was housed on the property when he was not traveling" and because "[t]he facts cited do not support the inference that they all stayed under one roof at one time, and Ms. Drum's residence is the only relevant aspect of this *argument*."  [Doc. 35 at ¶ 25.i. (emphasis added)].  However, Plaintiff's belief regarding the size of the Grant Property is a direct quotation from her deposition testimony, which cannot legitimately be disputed.  Likewise, USAA is not making any "argument" here, as Plaintiff claims, and any such argument would nevertheless be improper given that the purpose of this portion of the briefing is to identify material *facts*, whether

17.     One of Plaintiff's sons currently lives at the Grant Property with his girlfriend, although her son does not pay rent to Allen Drum for the Grant Property.  [Doc. 34-2 at 263:24–264:9].

18.     In the five years between approximately July 2017 and July 2022, Ms. Drum stayed at the Grant Property a total of approximately 40 times.  [Doc. 34-2 at 11:12–12:1].

19.     As of July 29, 2022, Ms. Drum had not stayed at the Grant Property since the summer of 2021, but she continues to receive mail at the property, is registered to vote at the property, pays $800 per month in rent, and pays utilities.  [Doc. 34-2 at 8:18–20, 10:1–5, 11:9–11, 13:17–18].

20.     Ms. Drum has not executed a lease with her father to rent the Grant Property.  [Doc. 34 at ¶ 26; Doc. 35 at ¶ 17].

21.     Ms. Drum believes she will eventually come to own the Grant Property.  [Doc. 34-2 at 9:6–9].

22.     In April 2021, Ms. Drum purchased a nearly 3,000-square foot house at 1806 Empire Street in Loveland, Colorado (the "Empire Property").  The Empire Property contains four bedrooms and three bathrooms, which is double the number of bedrooms and triple the number of bathrooms as the Grant Property.  [Doc. 34 at ¶ 34; Doc. 34-2 at 8:23–9:1; Doc. 34-4].

***The Collision***

23.     On January 13, 2018, Plaintiff was a passenger in Mr. Frucci's truck when another vehicle rear-ended the truck.  [Doc. 34-2 at 62:1–9, 65:6–17].

---

disputed or not, in order to resolve USAA's Motion. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671–72 (10th Cir. 1998) (finding conclusory statements and attorney arguments submitted by the nonmoving party do not create a genuine issue of material fact).

24.     After the Collision, Ms. Drum recovered $50,000.00 in available bodily injury coverage from the tortfeasor's carrier, Safeco; $100,000.00 in UIM benefits from Geico; and $100,000.00 in UIM benefits from AFI, for a total of $250,000 of insurance benefits.  [Doc. 34 at ¶¶ 36–38; Doc. 35 at ¶¶ 5–7].

### B.    Plaintiff's Breach of Contract Claim Against USAA (Count I)

Ms. Drum and USAA primarily dispute whether Ms. Drum was covered under the USAA Policy as a "family member" of Allen Drum, which is defined in the Policy as "person related to **you** by blood, marriage, or adoption, who resides primarily in **your** household."  [Doc. 34-1 at 22, 31]; *see also* [Doc. 34 at 9–16; Doc. 35 at 18–21].  Thus, the Court's focus here is on the phrase "resides . . . in your household"—specifically, whether USAA has sufficiently shown an absence of a genuine dispute that Ms. Drum did not reside at the Grant Street address on the date of the Collision.

"Whether a person is a resident of a household for purposes of insurance coverage is determined by the facts and circumstances of each case."  *Geico Cas. Co. v. Collins*, 371 P.3d 729, 733 (Colo. App. 2016), *as modified* (Mar. 24, 2016); *see also Wheeler v. Allstate Ins. Co.*, 814 P.2d 9, 10 (Colo. App. 1991) ("An insurance contract should be construed to carry out the intention of the parties, and that intention should be ascertained, if possible, from the language in the policy alone.").  The USAA Policy here does not define the term "resident" or "reside."  *See generally* [Doc. 34-1].

Where an insurance policy does not define such terms, Colorado courts consider several factors to determine whether a person is a resident of a household for purposes of insurance coverage, including "[1] the subjective or declared intent of the individual, [2] the formality or informality of the relationship between the individual and members of the household, [3] the

existence of another place of lodging, and [4] the relative permanence or transient nature of the individual's residence in the household." *Grippin v. State Farm Mut. Auto. Ins. Co.*, 409 P.3d 529, 532 (Colo. App. 2016) (citing *Iowa Nat'l Mut. Ins. Co. v. Boatright*, 516 P.2d 439, 440 (Colo. App. 1973)).  Courts sometimes refer to these factors as the "*Boatright* factors."  *See id.* at 534 n.3; *Collins*, 371 P.3d at 733.  No single factor is dispositive, and "[a]ll must be considered in light of the basic consideration of whether the parties to the insurance contract intended that coverage would extend to the alleged insured."  *Boatright*, 516 P.2d at 440.

### 1.      Colorado Public Policy

Ms. Drum first argues that summary judgment is not appropriate because the definition of "family member" under the USAA Policy violates Colorado public policy and, therefore, is void and unenforceable.  [Doc. 35 at 14–17].  Under Colorado law, automobile insurance policies must provide UIM coverage "'for the protection of persons insured thereunder who are legally entitled to recover damages from the owners or operators of uninsured motor vehicles,' unless the named insured rejects the coverage in writing."  *Grippin*, 409 P.3d at 532 (citing Colo. Rev. Stat. § 10-4-609(1)(a)).  Such coverage must be "coextensive with the class of insureds covered under the liability provision of the policy."  *Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92, 98 (Colo. 1995).   "An insurance policy provision violates public policy and is therefore void and unenforceable if it attempts to 'dilute, condition, or limit statutorily mandated coverage.'"  *Grippin*, 409 P.3d at 532 (quoting *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1045 (Colo. 2011)); *see Pacheco v. Shelter Mut. Ins. Co.*, 583 F.3d 735, 740 (10th Cir. 2009) (finding that a UM/UIM provision that diluted, limited, or conditioned Colorado's statutorily mandated coverage was void and invalid as against public policy).

Colorado's automobile insurance statute defines an "insured" as "the named insured, *relatives of the named insured who reside in the same household as the named insured*, and any person using the described motor vehicle with the permission of the named insured."  Colo. Rev. Stat. § 10-4-601(5) (emphasis added).  The statute further defines a "resident relative" as

> a person who, at the time of the accident, is related by blood, marriage, or adoption to the named insured or resident spouse and who resides in the named insured's household, even if temporarily living elsewhere, and any ward or foster child who usually resides with the named insured, even if temporarily living elsewhere.

*Id.* at § 10-4-601(13).

Ms. Drum posits that "resident relative" under the statute is synonymous with "family member" under the USAA Policy.  [Doc. 35 at 15].  And she argues that the USAA Policy's definition of "family member"—which includes a relative "who resides *primarily* in **your** household," [Doc. 34-1 at 22 (first emphasis added)]—"violates public policy because it restricts the class of individuals insured to a relative who resides *primarily* in the household, whereas the statutory definition of 'resident relative' encompasses a broader class of individuals, such as Ms. Drum, who 'reside' in the household even if temporarily staying elsewhere."  [Doc. 35 at 15 (emphasis added)].  Ms. Drum cites *Grippin* for support, arguing that "a person who has multiple residences may be temporarily living elsewhere (other than the named insured's household) at the time of the accident."  [*Id.* at 15–16].  And because the USAA Policy's definition of "family member" references individuals who "primarily" reside in the named insured's household, Ms. Drum argues that the Policy improperly "narrows the statutorily defined class of insureds" and, therefore, "render[s] the Policy language in question void and unenforceable."  [*Id.* at 16].  The Court respectfully finds Plaintiff's arguments unpersuasive.

Although the *Grippin* court dealt with a similar public policy argument, Ms. Drum's reliance on that case is misplaced.  There, State Farm argued that it could enforce its policy

language limiting coverage to one who "resides primarily" in the named insured's household—identical to the Policy language here—instead of following the broader statutory language. *See Grippin*, 409 P.3d at 532. The *Grippin* court disagreed, explaining that "[t]he General Assembly did not expressly modify or define the word 'reside' to restrict the class of insureds only to relatives who reside 'primarily' with the named insured." *Id.* at 532–33. The court also observed that, under Colorado law, "a person can 'reside' in more than one place," and "a person who has multiple residences may be temporarily living elsewhere (other than the named insured's household) at the time of the accident." *Id.* at 533. Thus, the court continued,

> State Farm's definition of "resident relative" . . . narrows the statutorily defined class of insureds because relatives who "reside" with the named insured . . . but do not reside "primarily" with the named insured are included under the statute, but not included under State Farm's policy.

*Id.* Significantly, however, in reversing the district court's grant of summary judgment in favor of State Farm, the *Grippin* court acknowledged that the issue of whether the plaintiff "qualifie[d] as a 'resident' of his grandparents' household under the *Boatright* factors was neither presented in State Farm's motion for summary judgment nor addressed by the district court." *Id.* at 534 n.3. Thus, whether the plaintiff was "a resident relative and therefore an insured under the State Farm policies [was] a question of fact that ha[d] not yet been determined." *Id.* at 535.

Here, unlike State Farm in *Grippin*, USAA does not seek to interpret its Policy by qualifying the term "reside" with "primarily," and expressly argues that "[t]he *Boatright* factors demonstrate Plaintiff did not reside at the Grant Property as a matter of law." [Doc. 34 at 11–13]. Indeed, USAA concedes that it is not requesting that the Court read the Policy's language regarding residence "as more restrictive than the statute" but, instead, argues that "the standard set forth in Colorado case law and the statutes should apply" to the facts of this case. [Doc. 40 at 6]. Thus, this Court now turns to the application of the *Boatright* factors. *See Potter v. State Farm Mut.*

*Auto. Ins. Co.*, 996 P.2d 781, 783 (Colo. App. 2000) (construing the phrase "residents of a household" by considering the *Boatright* factors).

> ## 2.    Application of the *Boatright* Factors

The Court will summarize the Parties' arguments below as to each of the *Boatright* factors, and then turn to its analysis.  The Court finds that, considering all of the below factors, and under the totality of the circumstances based on the undisputed facts, no reasonable juror could conclude that Ms. Drum was a resident of the Grant Property at the time of the Collision.   Several considerations lead to this conclusion—with particular focus on *Boatright* factors 3 and 4.

***Factor 1: Subjective or Declared Intent of the Individual.***  USAA contends that Ms. Drum cannot demonstrate an intent to reside at the Grant Property at the time of the Collision because "[t]he undisputed facts do not show that [she] had intended to move back to the Grant Property for the foreseeable future."  [Doc. 34 at 13].  USAA also argues that Ms. Drum's "claims that she has 'always maintained the Grant Street address' and it is where she 'intend[s] to retire'—in the future—do[] not demonstrate an intent to reside in the house <u>at the time of the [Collision]</u>."  [*Id.* (emphasis in original)].  Ms. Drum, of course, disagrees.  *See* [Doc. 35 at 19].  Specifically, she argues that her "declared intent is distinct and is summarized" by the following deposition testimony:

> I don't know how I can make it more clear.  I did stay with [Mr. Frucci] from time to time, like I think a lot of couples do in a serious relationship. . . .  I maintained my home at [the Grant Property] completely, and that was my home.

[Doc. 35 at 19 (quoting [Doc. 34-2 at 263:6–11])].  Ms. Drum also cites other portions of her deposition transcript to support her assertion that she "declare[d] her intent several times throughout her testimony and very obviously treated the Grant Property as her home and residence for nearly 18 years prior to (and several years) after [sic] the Collision."  [*Id.*].  But this statement is inapposite as to her intent to reside at the Grant Property *at the time of the Collision*.  Ms. Drum's

testimony does not directly address this issue, and she does not provide an affidavit or cite any deposition testimony evidencing her intent to reside at the Grant Street address *at the time of the Collision*.[9]

    ***Factor 2: The Formality or Informality of the Relationship with Members of the Household.***  USAA acknowledges that Ms. Drum did not have a formal agreement demonstrating that the Grant Property was her residence at the time of the Collision.  [Doc. 34 at 12].  However, citing to relevant authority, USAA asserts that "residents or members of a household" is "a phrase designative of a relationship where persons live together as a family and deal with each other in a close, intimate and informal relationship and not at arm's length."  [*Id.* (quotation marks omitted) (citing *Pamperin v. Milwaukee Mut. Ins. Co.*, 197 N.W.2d 783, 787 (Wis. 1972))]; *accord Boatright*, 516 P.2d at 440.  Based on this definition, USAA argues that Ms. Drum did not live "'together as a family' with her two adult sons, her teenage daughter, her father, and her three dogs" at the Grant Property, which she testified was "too 'tiny' for such an arrangement."  [Doc. 34 at 12].  Thus, USAA continues, "the lack of lease or other formal documentation memorializing Ms. Drum's right to reside at the Grant Property does not support finding residency at the Grant Property."  [*Id.* at 13].

---

[9] For instance, in *Thomas v. American National Property and Casualty Company*, No. 16-cv-02592-RBJ, 2017 WL 1077639, at *1 (D. Colo. Mar. 22, 2017), the court found a genuine dispute of material fact where the parties disagreed over the extent of the plaintiff's living arrangement at her parent's home where the plaintiff submitted an affidavit claiming she "spent approximately 120 days and 103 nights living at [her] parents' house."  Conversely, here, Ms. Drum fails to present any sufficient summary judgment evidence regarding *any* number of days she spent or nights she slept at the Grant Property between 2014 and 2020.  *See* Fed. R. Civ. P. 56(c)(1) (stating that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials").

Ms. Drum, for her part, states that she "paid her father rent" despite not having "a formalized lease, and she paid all utilities, trash service, etc. at the Grant Property." [Doc. 35 at 19]. USAA does not dispute that Ms. Drum pays rent and utilities at the Grant Property. *See* [Doc. 34 at ¶ 42]; *see also* [Doc. 34-2 at 9:18–10:5 (Plaintiff's testimony that she started paying rent at the Grant Property in 2000)].

**Factor 3: The Existence of Another Place of Lodging.** As discussed in detail herein, there is no dispute that Ms. Drum had another place of lodging during the relevant period—namely, the Wood Lane Property with Mr. Frucci, her daughter, and her three dogs.

**Factor 4: Relative Permanence or Transient Nature of the Individual's Residence or Household.** USAA argues that this factor "overwhelmingly demonstrates Ms. Drum did not reside with her father at the time of the [Collision]." [Doc. 34 at 11]. USAA points, *inter alia*, to the fact that Ms. Drum painted the Wood Lane Property and purchased furniture and appliances with Mr. Frucci. [*Id.* at 12]. Ms. Drum counters that "[s]he did not relinquish her residence at the Grant Property simply by sleeping at her boyfriend's house for a transitory period of time." [Doc. 35 at 19]. She also claims, *inter alia*, that she stayed at the Grant Property after her relationship ended with Mr. Frucci, and surveillance footage collected by Defendant Infinity "clearly proves the permanent nature of her residence at Grant Street." [*Id.*]. According to Ms. Drum, "she cannot be excluded from coverage simply because she was temporarily sleeping somewhere else at the time the Collision occurred." [*Id.* at 20].

With respect to relative permanence at the time of the Collision, it is undisputed that Ms. Drum, her teenage daughter, *and* her three dogs lived or "stayed" with Mr. Frucci at the Wood Lane Property beginning in 2014. *See* [Doc. 34-2 at 19:12–14, 22:19–25:19]. It is also undisputed that Ms. Drum continued to live at the Wood Lane Property until 2020, when Mr. Frucci moved

out, including at the time of the Collision.  *Compare* [Doc. 34-3 at ¶ 23 (Mr. Frucci's assertion that the relationship ended in "early 2020")] *with* [Doc. 35-4 at 24:4–26:10 (Plaintiff's deposition testimony that Mr. Frucci moved out of the Wood Lane Property after he became ill)].  Ms. Drum disputes Mr. Frucci's declaration that "[f]rom the time [Ms.] Drum started residing with me at the Wood Lane [P]roperty in 2014 to the end of our relationship in early 2020, I cannot recall a single time she slept at the Grant House."  [Doc. 34-3 at ¶ 23]; *see* [Doc. 35 at ¶ 23].  But she points to no deposition testimony, and offers no clarifying declaration, as to the distribution of those stays in relation to when she began living with Mr. Frucci in 2014 until the Collision in 2018, or to rebut Mr. Frucci's recollection.  [Doc. 35 at ¶ 23.i].[10]  Nor does she offer any testimony of her own to suggest that Mr. Frucci stayed at the Grant Property with her at the time of the Collision.

Ms. Drum also references other deposition testimony to support her assertion that she "declare[d] her intent several times throughout her testimony and very obviously treated the Grant Property as her home and residence for nearly 18 years prior to (and several years) after [sic] the Collision."  [Doc. 35 at 19].   Ms. Drum's testimony includes statements that:

- "I stayed [at the Wood Lane Property] while I maintained the house at 413 South Grant" and "[t]hat remained my house," [Doc. 35-4 at 20:1–5];

---

[10] At her deposition, Ms. Drum estimated that from 2012 to 2022, she had slept at the Grant Property over 40 times.  [Doc. 34-2 at 11:12–18].  When asked to narrow it to the last five years (measured from July 2022), in response to Defendant USAA's question "[w]ithin the last five years . . . have [you] stayed [at the Grant Property] forty times," Ms. Drum answered "yes."  [*Id.* at 11:19-12:1].  Relatedly, the Court finds that Ms. Drum's use of the term "stay" to refer to her living situation with Mr. Frucci is immaterial for purposes of resolving the pending Motions, and does not change the outcome of this analysis. *See, e.g.,* [Doc. 35 at ¶ 21.ii. ("I did stay with Frank from time to time like I think a lot of couples do in a serious relationship.")].  Similarly, the Court is not persuaded by Plaintiff's attempts to distinguish between her living situation generally and the occasions when she "slept" at the Wood Lane Property. *See, e.g.,* [*id.* at ¶ 23; *id.* at 18 (stating that USAA's "argument is primarily based on disputed facts regarding sleeping arrangements"); *id.* at 19 ("She did not relinquish her residence at the Grant Property simply by sleeping at her boyfriend's house for a transitory period of time.")].

- "I have always maintained the Grant Street address" and "[t]hat is where I intend to retire," [*id.* at 310:13–21];

- the Grant Property is her "permanent residence" and "permanent home," [*id.* at 8:15–23];

- she considers the Grant Property to be her home, she pays rent there, "maintain[s] that home," pays the utilities, is registered to vote at the Grant Property, and "in the future, that will be a house I have," [*id.* at 9:6–10:9];

- she did not receive any bills or pay rent or utilities at the Wood Lane Property, [*id.* at 30:5–9, 260:15–23]; and

- she moved some, but not all, of her clothes to the Wood Lane Property, [*id.* at 22:5–18].

Even construing this testimony in the light most favorable to Ms. Drum, it does not reflect relative permanence at the Grant Property as of the date of the Collision.  Nor does her payment of rent or utilities under the circumstances of this case.  There is no evidence from her family members who did live at the Grant Property, i.e., Allen Drum or her sons, that they considered her to be residing at the Grant Property.  And—in addition to Ms. Drum's lack of direct dispute to Mr. Frucci's assertions that "Ms. Drum resided with [him] . . . until January 2020" and he "cannot recall a single time [Ms. Drum] slept at the Grant House" between 2014 and 2020, *see* [Doc. 34-3 at ¶¶ 7, 23]—other portions of Ms. Drum's deposition testimony reflect that her living arrangements at the Grant Property were relatively transient as of 2018:

**Q.  Okay.  And so you went to stay with Frank in 2013 or 2014?**

A.  Uh-huh.

**Q.  And then when did you stop living with Frank?**

A.  After Frank became ill, he moved out of the house after his hospital stay.

**Q.  Okay.  And when was that? . . . [W]as it before or after COVID?**

A.  Before COVID.

. . .

**Q.  Okay.  So Frank moved out of the house. . . .  And then where did you move?**

A.  I moved to 413. . . .  I went back to 413 South Grant.

**Q.  Would you say that Frank became ill after the accident?**

A.  Yes.

**Q.  Okay.  So at the time of the accident, you were living with Frank?**

A.  Yeah, staying with Frank at the time of the accident, yes.

**Q.  And at the time of the accident, how frequently would you stay at 413 South Grant?**

A.  Infrequently.

**Q.  Infrequently?**

A.  Yes, uh-huh.

[Doc. 35-4 at 25:4–26:10].

USAA cites three cases to support a finding of non-residence where the claimants—adult children of the insureds—used the insured's addresses to receive mail, maintained a voter registration with the insured's address, or left some personal belongings at the insured's home. *See* [Doc. 34 at 14–16]; *see also Progressive Select Ins. Co. v. Rafferty*, 472 F. Supp. 3d 1141, 1146–48 (M.D. Fla. 2020) (applying Florida law, and finding that the named insured's adult child did not reside with the insured for coverage purposes even though the adult child referred to the insured's address as his "permanent home," used the address for "mail and government and business documents," and stayed overnight as a guest; and noting that the adult child's girlfriend (who was seeking coverage under the insured's policy as an "unmarried dependent" of the adult

child) failed to identify any authority to support that the adult child "maintained two residences—a 'living arrangement' with her and a 'permanent residence' with [his father] based on using his father's address for mail and legal documents"); *State Farm Mut. Auto. Ins. Co. v. Taussig*, 592 N.E.2d 332, 334–35 (Ill. App. Ct. 1992) (applying Illinois law, rejecting the defendant's argument that he regarded his apartment "as only a temporary living situation" and finding unpersuasive "the defendant's argument that simply because he still had a room in his parents' home and left some of his personal belongings there and continued to use the mailing address, he was still living with them"); *Fennell v. N.Y. Cent. Mut. Fire Ins. Co.*, 305 A.D.2d 452, 453 (N.Y. App. Div. 2003) (applying New York law, finding that the insured's adult son was not a "resident of his parents' household" even though the son "retained his parents' address on his driver's license and voter registration card, listed his parents' address on the police report following the incident, and continued to receive mail at his parents' house," and crediting, *inter alia*, the son's girlfriend's testimony that he "was living with her at the time of the incident, and that he stayed at her residence every night").

Ms. Drum fails to address any of these cases in her Response, nor does she cite any cases that support her arguments. *See* [Doc. 35 at 18–21]. And like the claimants in *Rafferty* and *Fennell*, Ms. Drum fails to present any sufficient evidence to support that she was living with her father, rather than her long-time partner, at the time of the Collision merely because she received mail, maintained a voter registration, or left some personal belongings at the Grant Street address. Instead, the only case Ms. Drum cites is *Geico Casualty Co. v. Collins*, claiming that case is "instructive" here. [*Id.* at 20]. However, as Ms. Drum acknowledges, the *Collins* court ruled in favor of the insurer and found that the plaintiff "was not a resident of [his] wife's household," [*id.*], and reached this conclusion based on an analysis of the *Boatright* factors. *Collins*, 371 P.3d at

730–31, 734–37. The *Collins* court explained that the plaintiff did not declare an intent to move back into his wife's house "in his affidavit or deposition testimony," and the court was "not persuaded that [the plaintiff's] intent to return to the house was demonstrated by the facts that he did not change his mailing address or the address on his driver's license and he did not pay regular rent to his friends." *Id.* at 734. In addition, the court rejected the plaintiff's argument that "he had not yet established another *permanent* place of lodging, in the sense that he had intended to make [another place] his permanent home" because "even if true, that fact would show merely that [the plaintiff] had not established a new *domicile*." *Id.* at 735 (second emphasis added). The court observed that the phrase "residents of a household" is not synonymous with "domicile," which "requires bodily presence in a place coupled with an intention to make it one's permanent home." *Id.* (brackets, quotations, and citation omitted).

Like the *Collins* court, this Court is not persuaded that Ms. Drum's maintaining a mailing address at the Grant Property or assertions that she considers the Grant Property to be her "permanent home" permit a reasonable jury to conclude that she maintained a residence at the Grant Property at the time of her Collision. *See* [Doc. 35-4 at 8:16–9:17]; *see also* [Doc. 35 at 19 (arguing that she "never intended or envisioned her boyfriend's house as her permanent residence")]. As the *Collins* court explained, these arguments relate to Ms. Drum's domicile, but not her residence. *See Collins*, 371 P.3d at 735. And this Court is concerned with the latter— namely, whether Ms. Drum qualifies a "family member" who "resided" at the Grant Property under the USAA Policy. [Doc. 34-1 at 22, 31]; *see also Collins*, 371 P.3d at 735 ("A material difference between domicile and household is that a domicile once acquired is not lost when a person leaves it until [s]he establishes a domicile elsewhere. The same is not true with respect to

a household; therefore, physical absence coupled with intent not to return is sufficient to sever the absent person's membership in the household." (quotation marks, citations, and ellipses omitted)).

Based on the record before it, this Court concludes that no reasonable trier of fact could infer "from the totality of the circumstances revealed by the undisputed evidence" that Ms. Drum was a resident of the Grant Street address at the time of the Collision. *Am. Com. Ins. Co. v. Bachicha*, 256 F. Supp. 2d 1219, 1223 (D.N.M. 2003) (quotation omitted).

### C.    Reasonable Expectations Doctrine

Ms. Drum further argues that she is entitled to coverage pursuant to the doctrine of reasonable expectations. *See* [Doc. 35 at 17–18]. Under the doctrine of reasonable expectations, an insurer is obligated to "clearly and adequately convey coverage-limiting provisions to insureds." *Bailey*, 255 P.3d at 1048. The Colorado Supreme Court has explained that "the reasonable expectations of insureds have succeeded over exclusionary policy language" in two types of situations:

> (1) where an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or she is not entitled to the coverage at issue; and (2) where, because of circumstances attributable to an insurer, an ordinary, objectively reasonable person would be deceived into believing that he or she is entitled to coverage, while the insurer would maintain otherwise.

*Id.* at 1048–49. However, this doctrine "applies only to the reasonable expectations of insureds, and thus only after it is determined that the claimant is an insured." *Am. Fam. Mut. Ins. Co. v. Hansen*, 375 P.3d 115, 122 (Colo. 2016) (quotation and citation omitted) (emphasis in original).

Here, because the Court has already determined that no reasonable trier of fact could infer from the totality of the circumstances revealed by the undisputed evidence that Ms. Drum was a resident of her father's household at the time of the Collision—thereby excluding her from the USAA Policy's definition of "family member"—the doctrine of reasonable expectations does not

apply.  *See Grippin*, 409 P.3d at 535 ("But because the doctrine of reasonable expectations applies 'only *after* it is determined that a claimant is an insured,' Grippin cannot rely on it unless he is, in fact, an insured.") (quoting *Hansen*, 375 P.3d at 122).

### D.   Plaintiff's Remaining Claims Against USAA (Counts III and V)

Finally, because the Court has concluded that no reasonable trier of fact could infer, based on the totality of circumstances established by the undisputed evidence, that Ms. Drum is an insured "family member" under the USAA Policy as a matter of law, her remaining claims against USAA—namely, common law bad faith and statutory unreasonable delay or denial (Counts III and V)—also fail.  *See MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1192–93 (10th Cir. 2009) ("It is settled law in Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage."); *see also Gerald H. Phipps, Inc. v. Travelers Prop. Cas. Co. of Am.*, 679 F. App'x 705, 710 (10th Cir. 2017); *Johnson v. Am. Nat'l Prop. and Cas. Cos.*, No. 17-cv-02218-WJM-KMT, 2019 WL 463026, at *5 (D. Colo. Feb. 6, 2019) ("Plaintiffs have failed to carry their burden at summary judgment to demonstrate that [Defendant] owed benefits to them and as a result breached the insurance contract between them.  Because these bad faith claims are derivative of Plaintiffs' failed breach of contract claim, they also cannot survive [Defendant's] Motion.").

For these reasons, the Court **GRANTS** USAA's Motion for Summary Judgment.

## II.   Infinity's Motion for Summary Judgment

Infinity seeks summary judgment on the same grounds as USAA, and incorporates by reference the facts, arguments, and exhibits discussed in USAA's Motion and Reply.  *See* [Doc. 41 at 2 ("The bases for dismissal of all of Plaintiff's claims against USAA . . . and against Infinity

are the same.  The policy language under both policies is substantially the same for purposes of determining if Plaintiff has UIM coverage pursuant to the resident relative provision.")].

Relevant here, Infinity issued an insurance policy to the "Drum Family Living Trust," effective April 9, 2017 to April 9, 2018, with an address of "413 S. Grant Ave" in Fort Collins, Colorado—i.e., the Grant Property ("Infinity Policy").  [Doc. 41-1 at 4].  The Infinity Policy provides in relevant part that an "insured" includes a "family member," which is defined as "a person related to you by blood, marriage or adoption who is a *resident of your household*."  [*Id.* at 7, 10 (emphasis added)].  Ms. Drum seeks UIM coverage under the Infinity Policy as a "family member" who was a "resident of [the Grant Property] household," based on substantially the same arguments presented in her Response to USAA's Motion.  *See, e.g.*, [Doc. 45 at 8 (Ms. Drum stating that she is adopting the same reasoning from her "Response to Defendant USAA GIC's Motion for Summary Judgment")].  It thus follows that Infinity's Motion for Summary Judgment should be granted for the same reasons as USAA's Motion.

Nevertheless, Ms. Drum contends that Infinity raises two new disputes that preclude summary judgment.  [*Id.* at 7].  First, Ms. Drum argues that Infinity's and USAA's Policies define "family member" differently, because the Infinity Policy's definition includes a person who is a "resident of your household," whereas the USAA Policy defines "family member" as a person who "resides *primarily* in your household."  *See* [*id.*]; *compare* [Doc. 41-1 at 7 (Infinity Policy)] *with* [Doc. 34-1 at 22 (USAA Policy)].  Second, Ms. Drum contends that because the named insured under the Infinity Policy is the "Drum Family Living Trust," as opposed to Allen Drum, "the definitions of 'you,' 'resident' and 'relative' become even more convoluted and subject to genuine dispute."  [Doc. 45 at 7].  According to Ms. Drum, Infinity's arguments "fail to consider these important distinctions" between the two Policies because "they relate to the validity of the Infinity

Policy definitions and provisions." [*Id.*]. Therefore, Ms. Drum continues, "[a]t a minimum, Defendant Infinity's assertions with respect to these factors raise additional disputes for which a finding of Summary Judgment would be improper." [*Id.*]. Respectfully, the Court is not persuaded.

With respect to Ms. Drum's first challenge regarding the different definitions of "family member" under the relevant Policies, her focus on the USAA Policy's use of the term "primarily" is misplaced. Indeed, in deciding that a reasonable factfinder could not conclude that Ms. Drum resided at the Grant Property for purposes of coverage under the USAA Policy, the Court's analysis above did not focus at all on the term "primarily" as used to define "family member" under that Policy. Instead, the Court focused on the *Boatright* factors, an approach that Ms. Drum expressly acknowledges is the proper standard under the circumstances of this case. *Compare* [Doc. 35 at 18 (Plaintiff's assertion, in response to USAA's Motion, that the Court should consider the *Boatright* factors to determine residence)] *with* [Doc. 45 at 3 (in response to Infinity's Motion, stating that she "incorporates her . . . legal arguments and exhibits[] from her Response [to USAA's Motion] as they relate to her residency at the Grant Property")].[11]

As to Ms. Drum's second challenge, the Court disagrees that it makes any difference that the named insured under the Infinity Policy is the "Drum Family Living Trust" as opposed to Allen Drum. Notably, Ms. Drum merely concludes, without any explanation or authority, that the definitions of the terms "you," "resident," and "relative" become "more convoluted and subject to genuine dispute" because the "Drum Family Living Trust" is listed as the named insured under the

---

[11] USAA likewise disclaimed as erroneous Ms. Drum's position that USAA was seeking a more restrictive reading of the definition of "family member" under the USAA Policy than the term "resident relative" under Colorado's automobile insurance statute, Colo. Rev. Stat. § 10-4-601(13). *See* [Doc. 40 at 6].

Infinity Policy.  [Doc. 45 at 7].  However, the Infinity Policy clearly defines the term "you" to include "[t]he 'named insured' shown in the Declarations," [Doc. 41-1 at 7], and the Declarations page identifies the "Drum Family Living Trust" as the named insured, [*id.* at 4]—a fact Ms. Drum explicitly does not dispute in her Response to Infinity's Motion.  *See* [Doc. 45 at ¶ 3 ("The named insured is the Drum Family Living Trust. . . . This fact is **undisputed**." (emphasis in original))].  And the term "resident" under the Infinity Policy obviously refers to a "resident of [the Drum Family Living Trust] household," [Doc. 41-1 at 7], the address of which is identified as the Grant Property, [*id.* at 4].  Finally, the term "relative" is not used in any of the sections of the Infinity Policy cited by the Parties, as Plaintiff suggests in her Response.  *See generally* [*id.*].

Accordingly, for the reasons set forth above, Infinity's Motion for Summary Judgment is **GRANTED**.

## III.    Plaintiff's Motion for Summary Judgment

As noted above, each side moves for summary judgment in their own right, and therefore this Court treats them as "individual motions for summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party." *Banner Bank*, 916 F.3d at 1326.  Here, Ms. Drum seeks summary judgment as to all of her claims against USAA. [Doc. 42].  Because the Court has already found in favor of USAA as to those claims, Plaintiff's Motion for Summary Judgment is **DENIED as moot**.  *See Sayed v. Profitt*, 743 F. Supp. 2d 1217, 1218 n.1 (D. Colo. 2010) (denying as moot the plaintiff's motion for summary judgment after granting the defendant's motion for summary judgment), *aff'd,* 415 F. App'x 946 (10th Cir. 2011).

## CONCLUSION

For the reasons set forth herein, it is **ORDERED** that:

(1)     Defendant USAA General Indemnity Company's Motion for Summary Judgment [Doc. 34] is **GRANTED**;

(2)     Defendant Infinity Auto Insurance Company's Motion for Summary Judgment [Doc. 41] is **GRANTED**;

(3)     Plaintiff's Motion for Summary Judgment [Doc. 42] is **DENIED as moot**;

(4)     Judgment is **ENTERED** in favor of Defendants and against Plaintiff on each of Plaintiff's claims;

(5)     Defendant USAA's Unopposed Motion to Reset Pretrial Conference [Doc. 50] is **DENIED as moot**;

(6)     The Final Pretrial Conference set for March 16, 2023 is **VACATED**; and

(7)     Defendants are awarded their costs pursuant to Federal Rule of Civil Procedure 54(d)(1) and D.C.COLO.LCivR 54.1.


DATED:  March 6, 2023                                    BY THE COURT:

                                                          Nina Y. Wang
                                                          United States District Judge